Robert J. Watson Overland Park City Attorney City Hall, 8500 Santa Fe Drive Overland Park, Kansas 66212-2899
Dear Mr. Watson:
As City Attorney for the City of Overland Park you ask several questions about the City's duty under the Kansas Open Records Act[1] in responding to a request "for all motor vehicle accident reports generated by the department on a daily basis." The requestor has informed you,
 "[I]t is in the business of supplying police reports to insurance companies. Our niche is being able to out perform the insurance companies by providing police reports to them faster than they could request reports on their own."
You first ask if selling the records to an insurance company violates K.S.A. 21-3914. Related to this, you also suggest that an individual's relationship to his or her insurer may create a situation whereby the sale of the record is a de facto sale to the motorist.
K.S.A. 21-3914 provides in relevant part:
 "(a) No person shall knowingly sell, give or receive, for the purpose of selling or offering for sale any property or service to persons listed therein, any list of names and addresses contained in or derived from public records except. . . ."
This statute does not prohibit all commercial use of public records, even those containing names and addresses.[2] What is prohibited by this provision is obtaining a person's name and address from public records for the purpose of selling that person something. In Attorney General Opinion No. 87-73 it was concluded that the term "person," as used in this statute, includes businesses, so that it is illegal to obtain a business' name and address from public records in order to sell that business something. (We note that for purposes of chapter 21, the definition of person includes "corporations, partnerships, and associations," and we agree with Opinion No. 87-73.) In other words, if the marketing company is obtaining the records with the intention of discovering the names and addresses of the insurance companies from accident reports, and making an initial contact based upon the arrest report to sell the insurance companies a service, the marketing company has violated K.S.A. 21-3914.
But because K.S.A. 21-3914 is a penal statute, it must be strictly construed. It would be stretching the limits of strict construction to say that the marketing company cannot sell the accident reports to insurance companies with whom they have a preexisting relationship. It is using the records to obtain names and addresses to solicit sales that is prohibited, not the sale of records. That the insurance company may be a fiduciary for an insured and the insured's name is listed in the records does not seem to matter.
You next ask whether the request is a proper one because it is prospective in nature, and because it would present a substantial burden on the City's police department. As we understand it, the marketing company wants the police department to copy and send them the accident reports indefinitely, on a daily basis.
The Kansas Open Records Act (KORA) defines a defines the term "public record" as:
 "[A]ny recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency. . . ."[3]
If a record is not yet in existence, it is not "recorded information" as of the date of the request and so does not meet this definition and is not a public record. Based upon this definition, we do not believe that the KORA covers records not yet in existence.
Stated another way, we believe that a request for documents which are not yet in existence does not adequately identify the documents sought. Kansas' open records act was patterned after Kentucky's open records act.[4] In Kentucky Attorney General Opinion No. 91-78, the Kentucky Attorney General considered a request to a school board for "`all documents (including but not limited to) monthly financial statements, working budgets, and other supporting data and materials compiled for the board prior to each special and regular board meeting.'" The opinion concluded:
 "A `standing request' for all documents compiled by the Hardin County Schools for use by the board may properly be denied on the grounds that it fails to reasonable identify the records sought. While the purpose and intent of the Open Records Act is to permit the `free and open examination of public records,' the right of access is not absolute. [Citation omitted.] As a precondition to inspection, a requesting party must identify with `reasonable particularity' those documents which he wishes to review."
You also ask whether the request is unreasonably burdensome. K.S.A.45-218(e) provides:
 "(e) The custodian may refuse to provide access to a public record, or to permit inspection, if a request places an unreasonable burden in producing public records or if the custodian has reason to believe that repeated requests are intended to disrupt other essential functions of the public agency. However, refusal under this subsection must be sustained by preponderance of the evidence."
The question of whether the request is unreasonably burdensome is more difficult if it is merely an issue of the volume of documents. There are no reported Kansas appellate cases and no Kansas Attorney General opinions interpreting this provision, but the Kentucky Attorney General has on several occasions considered Kentucky's analogous statutory provision. In an older opinion, a Kentucky Attorney General said,
 "Repeated requests to inspect the records of a public agency alone do not, in our opinion, amount to harassment. Every request to inspect a public record causes some inconvenience to the staff of the public agency. No doubt some state, county, and local agencies have found it necessary to employ additional staff since the enactment of the Open Records Law in order to comply with the provisions of the law. We believe that a public agency should only invoke the excuse of harassment in extreme and abusive circumstances. We believe it is the legislative intent that public employees exercise patience and long-suffering in making public records available for public inspection. The law provides that when a public record dispute is taken to court, `the burden of proof shall be on the public agency to sustain its action.' [Citation omitted]."[5]
One example of a situation in which the Kentucky Attorney General found a request to be an unreasonable burden was a request for inspection of approximately
 "800 records, contained among seventy-seven files . . . where the difficulty of separating confidential from non confidential material was exacerbated by the substantial volume of records involved."[6]
In the present case, you state that in 1997 the City produced 6,645 accident reports. We do believe that it would be unreasonably burdensome for the City to be responsible for producing and copying these each day pursuant to a standing or prospective request; however it is not simply the volume of records that makes the request unduly burdensome. Rather, we believe that it is the degree of interference with the functioning of the government agency that is relevant. There are many instances in which commercial use is made of government records, sometimes involving substantial numbers of records. For instance, title insurance companies routinely manage to obtain copies of essentially every document filed with the local Registers of Deeds.
The manner of inspection and copying requested by the marketing company has much to do with the interference the request causes. We believe the marketing company has an obligation to act to minimize interference. For instance, rather than obtaining the records daily, it might be more appropriate to obtain them on a weekly or monthly basis. Alternatively, rather than expecting a police department staff person to make the copies, perhaps the marketing company should send their staff to actually make the copies. The police department, on the other hand, needs to work with the marketing company so that it can devise a way to obtain the records, without interfering with the police department's functions. In any event, the requestor is responsible for reasonable costs associated with providing the requested records, including the police department's staff time in making the records available and in making, or supervising the making, of copies.[7]
In summary, we do not believe that the police department is required to, on a daily basis, photocopy and send to the requestor, accident reports as they come available. The simple fact that the requestor intends to use them for a commercial purpose and that there is a large volume of records, however, does not alone make the request unreasonably burdensome on the police department. It does, however, make it necessary for the requestor to suggest a means of obtaining copies to minimize the disruption of the police department's functions.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 45-215 et seq.
[2] See, e.g., Attorney General Opinion No. 96-88.
[3] K.S.A. 1997 Supp. 45-217(f)(1).
[4] See Frederickson, Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act, 33 U. Kan. L. Rev. 205, 226 (1985).
[5] Kentucky Attorney General Opinion No. 77-151.
[6] Kentucky Attorney General Opinion No. 89-88.
[7] K.S.A. 1997 Supp. 45-219(b), (c)(1).